UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FIRST MERIT BANK,

                Plaintiff,                              Case No. 15-cv-13548

v                                          Honorable Thomas L. Ludington

J&B PRODUCTS, LTD., et al.,

                Defendants.

_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON
COUNTS II, III, AND IV, DISMISSING COUNT I OF PLAINTIFF'S COMPLAINT AS
MOOT, AND DIRECTING PARTIES TO CONFER IN GOOD FAITH AND SUBMIT
SUPPLEMENTAL BRIEFS REGARDING ATTORNEYS' FEES**

Plaintiff First Merit Bank initiated the present action by filing its complaint against

Defendant J&B Products, Ltd. ("J&B"), and Defendant Joseph Bommarito on October 8, 2015.

*See* Compl., ECF No. 1.   Plaintiff alleges that, by defaulting on three loan agreements,

Defendants are in breach of various guarantees and promissory notes.  *Id*. Plaintiff therefore

seeks repayment of all outstanding loan obligations ($415,526.46 at the time the complaint was

filed) and attorneys' fees.  After the close of discovery, on July 27, 2016 Plaintiff moved for

summary judgment on Counts II, III, and IV of Plaintiff's complaint.  *See* ECF No. 16.  For the

reasons stated below, Plaintiff's motion will be granted, and summary judgment will be granted

in favor of Plaintiff on Counts II, III, and IV.  Because there is no dispute that Loan No. 1 has

been paid, Count 1 of Plaintiff's complaint will be dismissed as moot.

**I.**

Plaintiff First Merit Bank is a National Banking Association with a principal place of

business in Ohio.  *See* Compl., ¶ 3, ECF No. 1. Plaintiff First Merit acquired Citizens Bank, N.A.

during the relevant time period, and is Citizens Bank's successor in interest. *Id.* Defendant J&B is a Michigan Corporation with a principal place of business at 2201 South Michigan Avenue in Saginaw, Michigan. *Id.* at ¶ 4. Defendant Joseph Bommarito, a resident of Saginaw, Michigan, is the registered agent, principal, and manager for J&B. *Id.* at ¶¶ 5-6. He is also the registered agent, principal, and manager of nonparty Bommarito Realty, LLC, a Michigan limited liability company located in Saginaw. *Id.* at ¶ 7.

### A.

On December 9, 2011 Bommarito Realty, LLC entered into a loan agreement with Citizens Bank for the principal amount of $37,448.13 ("Loan No. 1"). *See* Loan No. 1, ECF No. 16 Ex. 1. Pursuant to the agreement, an event of default would occur if Bommarito Realty failed to make any payment when due, and, in the event of default, the lender had the option to declare the entire unpaid principal balance and all uncured interest due. *Id.* The loan was secured by real estate located at 2201 South Michigan Avenue in Saginaw, Michigan. *See* ECF No. 16 Ex. 2. The loan was guaranteed by both Defendant Bommarito and Defendant J&B Products. *See* Loan No. 1; *See also* ECF No. 16 Exs. 3-4. It is undisputed that Loan No. 1 has been paid in full. *See* Def.'s Mot. Summ. J. 2, ECF No. 16.

Defendant J&B entered into a business loan agreement with Citizens Bank on August 14, 2012 through which Citizens Bank agreed to make loan advances to Defendant J&B ("Loan No. 3"). *See* Loan No. 3, ECF No. 16 Ex. 6. Through Loan No. 3 Defendant J&B agreed to maintain a minimum combined debt service coverage ratio of 1:2 to 1, to be evaluated at the end of each fiscal year. *Id.*[1] An event of default would occur if J&B failed to make any payment

---

[1] Loan No. 3 defines the debt service ratio as "{[Earnings before interest, taxes, depreciation and amortization] minus taxes minus withdrawals minus non-recurring gains plus non-recurring losses} divided by required annual principal and interest payments for such entities on a combined basis." "Combined" is defined as that of Defendant

when due, failed to comply with any loan covenant, or the lender in good faith believed itself to be insecure. *Id.* In the event of default First Merit had the option to declare all indebtedness due. *Id.* Pursuant to Loan No. 3, on September 11, 2013 Defendant J&B Products and Plaintiff First Merit Bank (the successor in interest of Citizens Bank) entered into a promissory note whereby Plaintiff advanced Defendant J&B $300,000.00. *See* ECF No. 16 Ex. 7. Loan No. 3 was secured by substantially all of the assets of J&B, and was personally guaranteed by Defendant Bommarito. *See* ECF No. 16. Exs. 8-10.

Defendant J&B entered into a second business loan agreement with Plaintiff First Merit on September 11, 2013 through which First Merit agreed to make loan advances to Defendant J&B ("Loan No. 5"). *See* Loan No. 5, ECF No. 16 Ex. 11. That same day J&B executed a promissory note payable to Defendant J&B in the amount of $300,000.00. *See* ECF No. 16 Ex. 12. Under Loan No. 5 Defendant J&B agreed to maintain a minimum combined debt service coverage ratio of 1:2 to 1, to be evaluated at the end of each fiscal year.[2] *Id.* An event of default would occur if J&B failed to make any payment when due, failed to comply with any loan covenant, or the lender in good faith believed itself to be insecure. *Id.* In the event of default First Merit had the option to declare all indebtedness due. *Id.* As with Loan No. 3, Loan No. 5 is secured by substantially all of the assets of J&B, and is personally guaranteed by Defendant Bommarito. *See* ECF No. 16. Exs. 8-10.

Also on September 11, 2013, Defendant J&B and Defendant Bommarito entered into a subordination agreement with Plaintiff First Merit. *See* Subordination Agreement, ECF No. 16 Ex. 13. Pursuant to that agreement, Defendant J&B agreed to subordinate all amounts owed to

---

J&B and Bommarito Realty, LLC. The debt service ratio was to be calculated "in accordance with generally accepted accounting principles, applied on a consistent basis, and certified by Borrower as being true and correct."

[2] Loan No. 5 defines the debt service ratio as {[Earnings before interest, taxes, depreciation and amortization] less dividends and distributions} to {interest plus principal paid on long term debt and capital leases}."

and for the benefit of Defendant Bommarito to the debts owed to First Merit under the Loan Agreements. *Id*.   While Defendant Bommarito signed the agreement on behalf of J&B on September 11, 2013, he did not sign the agreement on his own behalf until December of 2013 due to an oversight.  *See* Ehrlinger Dep. 107, ECF No. 16 Ex. 17.

**B.**

In addition to obtaining loans from Plaintiff First Merit, Defendants also obtained a series of loans from the John W. Wolf Revocable Trust (the "Trust") totaling $600,000.00.  *See* Wolf Aff. ¶ 3, ECF No. 16 Ex. 16. On August 12, 2012 Defendant *J&B* obtained a loan in the amount of $200,000.00 from the Trust. *Id*. at ¶ 6.  Then, from September 27, 2012 to November 19, 2012 Defendant *Bommarito* obtained four loans totaling $400,000.00 from the Trust. *Id*. Concerning the loans made to him personally, Defendant Bommarito represented to John W. Wolf that he intended to loan the proceeds to Defendant J&B.  *Id*. at ¶ 9. Defendant J&B repaid the loans through seven installment payments to the Trust. *Id*. at ¶ 10.  The first six installments were paid on December 5, 2012, December 21, 2012, July 12, 2013, July 22, 2013, July 26, 2013, and August 15, 2013, respectively.  *Id.* The final $200,000.00 installment was paid by Defendant J&B to the Trust on October 3, 2013. *Id.* Plaintiff alleges that this final payment was in violation of the parties' Subordination Agreement. Defendants contend that they did not violate the Subordination Agreement because the agreement was not executed until December when Defendant Bommarito signed the agreement.

2013 was ultimately a difficult year for Defendants, and J&B lost over $250,000.00.  *See* Flint Aff. ¶ 11.   As a result, it is undisputed that Defendant J&B was unable to meet the minimum debt service ratio of 1.20 to 1.0 as required by the Loan Agreements.  Plaintiff thus became concerned with the performance of J&B, and noticed numerous issues with Defendants'

2013 financial reporting. *See* Ehrlinger Dep. 17, 20, 42-43, 48-50, ECF No. 21.   Plaintiff alleges

that Defendants' 2013 financial statements did not comply with GAAP and overstated J&B's

accounts receivable, thereby misrepresenting a negative balance in violation of the Loan

Agreements.

### C.

Plaintiff did not immediately take any action related to these defaults.  In July of 2014,

Plaintiff downgraded the loan to 11, meaning it was substandard and/or needed to be watched.

*See* Ehrlinger Dep. 49-50. Then, at some point in the second half of 2014 the Loan Administrator

Charles Flint referred the loans to First Merit's Managed Assets Department.  *See* Flint Aff. ¶ 4.

Mr. Flint concluded that the company needed additional capital in the form of equity or

subordinated debt to replace J&B's operating losses and to compensate for large distributions

made to Defendant Bommarito and Bommarito Realty. *Id.* at ¶¶ 5-6. Mr. Flint contends that he

determined that it was in First Merit's interest to end its relationship with Defendants after

Defendant Bomnmarito refused to offer any of his assets (such as his unencumbered second

residence) as additional collateral. *Id.* at ¶¶ 7-8.

On October 15, 2014, Plaintiff First Merit allegedly sent Defendants written notice of

default. *See* 2014 Default Letter, ECF No. 16 Ex. 14.  Through the notice, Plaintiff alleged that

Defendants had defaulted on their loan covenants in the following three ways:

(1) Failure to maintain the required minimum debt service coverage ratio of 1.20x
    at 12/31/13 fiscal year end;

(2) Failure to adhere to the terms of the Joseph C. Bommarito Subordination
    Agreement restricting payments to creditor without prior Bank approval.

(3) Failure to repay all advances outstanding under the line of credit at least once
    each calendar year and maintain a zero balance for 30 consecutive days.

*Id.* at 2.  The notice instructed that if Defendants did not cure the defaults within 10 days the bank "may pursue its remedies" and "may commence legal action to exercise the Bank's cumulative creditor's rights and remedies."   *Id* at 3.   At that time, Plaintiff alleged that $468,438.32 in principal, interest, and late fees remained outstanding under the collective loan agreements. *Id.* at 2.  Defendants allege that they did not receive a copy of the 2014 Default Letter.  *See* Def.'s Resp. Summ. J. 3, ECF No. 20.

Plaintiff sent a second letter to Defendants on September 14, 2015, again notifying Defendant of their defaults. *See* 2015 Demand Letter, ECF No. 16 Ex. 15. The 2015 Demand Letter alleged that Defendants were in default on the loans for the following reasons:

> (a) Failure of the Borrower to maintain the Debt Service Coverage Ratio set forth in the Business Loan Agreements; (b) Violation of the Subordination Agreement; (c) the Cross-Default provisions in the Promissory Notes – the Bank has demanded payment of Loan #3; (d) the Bank believes that the prospect of payment or performance of the Notes is impaired; (e) The Bank in good faith believes itself secure.

*Id.*  Plaintiff therefore demanded immediate full repayment on Loan Nos. 3 and 5, and provided Defendants with ten days to cure the alleged defaults before it began taking remedial actions. *Id*. After Defendants failed to cure the alleged defaults, Plaintiff filed the present action on October 8, 2015.  *See* Compl. At the time the complaint was filed, Plaintiff alleged that Defendants owed in excess of $415, 000 in costs, interests, and attorneys' fees under the Loan Agreements. *Id*. at ¶ 2.

**II.**

Plaintiff now moves for summary judgment on Counts II, III, and IV.  A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying where to look in the record for

evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).  The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

**A.**

Defendants argue that there exists a material question of fact regarding whether Plaintiff First Merit exercised good faith in deeming itself insecure and declaring a default. "It has been said that the covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hammond v. United of Oakland, Inc.*, 483 N.W.2d 652, 655 (Mich. Ct. App. 1992).  Plaintiff is correct that Michigan law does not recognize a separate cause of action for a breach of the implied covenant of good faith and fair dealing apart from a claim for breach of the contract itself. *See Fodale v. Waste Mgmt. of Michigan, Inc.*, 718 N.W.2d 827, 841 (Mich. Ct. App. 2006).   "In other words, to invoke the implied covenant of good faith and fair dealing, a litigant must show that a party breached the underlying contract itself."  *Gay v. Fannie Mae*, 2014 WL 4215093, at *2 (Mich. Ct. App. Aug. 26, 2014).

Defendants have not raised the implied covenant as an independent cause of action, but as an affirmative defense to Plaintiff's breach of contract claims.  The Michigan Court of Appeals has recognized that a covenant of good faith and fair dealing may attend contracts that

make the manner of one party's performance "a matter of its own discretion." *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. Ct. App. 1975).  Here, the relevant contracts grant Plaintiff discretion in determining when and if to declare all indebtedness due in the event of default.  *See* Loan Nos. 3, 5.  Defendants' breach of the implied covenant affirmative defense is therefore attendant to Plaintiff's breach of contract claims.

## B.

Having determined that the implied covenant of good faith and fair dealing has properly been raised as an affirmative defense, the next inquiry is whether it applies to the contracts at issue.  The implied covenant of good faith and fair dealing cannot be used to override express contract terms.  *See Stephenson v. Allstate Ins. Co*., 328 F.3d 822, 826 (6th Cir. 2003).  Instead, it is a construction aid that arises where "one party to the contract makes its performance a matter of its own discretion." *Id*. (citations omitted). "Generally speaking, the implied covenant seeks to protect the contracting parties' reasonable expectations" and "serves to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms." *Hubbard Chevrolet Co. v. Gen. Motors Corp*., 873 F.2d 873, 876 (5th Cir. 1989) (applying Michigan law). In such a case, the law implies a duty to exercise discretion honestly and in good faith.  *Ferrell v. Vic Tanny Int'l, Inc*., 357 N.W.2d 669, 672 (Mich. Ct. App. 1984).  The Third and Fifth Circuits have recognized that "Michigan law does not imply the good faith covenant where parties have unmistakably expressed their respective rights." *Cutrone v. DaimlerChrysler Motors Co. LLC*, 160 F. App'x 215, at *1, *3 (3d Cir. 2005) (citing *Hubbard*, 873 F.2d at 877).

Defendants argue that Plaintiff First Merit breached the implied covenant of good faith and fair dealing by waiting until late 2014 to act on defaults that had occurred at the end of 2013.

Assuming that the issue of timing constitutes a discretionary act by Plaintiff under the Loan

Agreements, Defendants have cited no precedent for the proposition that a delay constitutes a

lack of good faith or fair dealing. Instead, timing issues are more properly addressed through the

defense of waiver; a defense which Defendants have not raised in response to Plaintiff's motion

for summary judgment. Nor could they, as Loans No. 3 and 5 each contain the following

provision:

> Lender shall not be deemed to have waived any rights under this Agreement
> unless such waiver is given in writing and signed by Lender.  No delay or
> omission on the part of Lender in exercising any rights shall operate as a waiver
> of such right or any other right. … No prior waiver by Lender, nor any course of
> dealing between Lender and Borrower, or between Lender and any Grantor, shall
> constitute a waiver of any of Lender's rights or of any of Borrower's or any
> Grantor's obligations as to any future transactions.

*See* Loan No. 3 pg 5, Loan No. 5. Pg. 4.  Defendants have not challenged the enforceability of

these provisions, and are therefore estopped from raising any waiver argument.

Defendants' also argue generally that Plaintiff's invocation of its acceleration rights

based on claims of insecurity and default was not in good faith.  The fact that the Loan

Agreements allowed Plaintiff the option of enforcing its rights by accelerating the unpaid loan

balance in the event of any defined default is not in itself a discretionary term as would implicate

the implied covenant of good faith and fair dealing.  In *Cutrone,* the Third Circuit was faced with

a franchise agreement in which a dealership obtained a non-exclusive right to sell Chrysler

products in its designated area, or "Sales Locality."  *Cutrone*, 160 F. App'x at 219.  After

Chrysler allowed another dealership within the same Sales Locality to sell Chrysler products, the

original dealership brought suit alleging a breach of the implied covenant of good faith and fair

dealing. *Id*. Applying Michigan law, the Third Circuit found that the covenant of good faith and

fair dealing inapplicable. Because the original franchisor was on notice that "sharing would

potentially occur" the contract unmistakably set forth the rights of the parties and established that the franchisor's rights were non-exclusive. *Id.* at 220. The fact that the franchisor exercised a right specifically contemplated by the contract was therefore insufficient to implicate the implied covenant of good faith and fair dealing. That is analogous to the present case, where the Loan Agreements provided Defendants with notice that Plaintiff would potentially enforce its acceleration rights in the event of default, and Plaintiff's exercise of that provision does not implicate Plaintiff's discretion unless the underlying term of default requires the exercise of discretion.

With regard to the alleged default for failure to maintain the required minimum debt service coverage ratio of 1.20 to 1.00, Defendants argue that Plaintiff knew 2013 was an unusual calendar year, that a loan officer advised Plaintiff that there was no concern with the loans, and that Plaintiff First Merit renewed the Loan Agreements and J&B's line of credit in September of 2013. This argument is without merit because this event of default did not implicate any discretion by Plaintiff First Merit. Instead, the Loan Documents expressly and unmistakably hold that any failure to comply with a loan covenant constitutes an event of default.

Defendants also argue that the allegation that they breached a covenant to "repay all advances outstanding under the line of credit at least once each calendar year and maintain a zero balance for 30 consecutive days" is without merit because Plaintiff did not enforce that covenant for years despite knowing that J&B was not in compliance. Again, Defendants' assertion is essentially a waiver argument. As noted above however, Defendants are estopped from alleging waiver under the express provisions of the Loan Agreements.

Finally, Defendants argue that Plaintiffs allegations of default and insecurity with regard to the Subordination Agreement were not based in fact and were not in good faith because

Defendants' payments to the Trust occurred prior to the effective date of the Subordination Agreement. This argument rests on a claim that the Subordination Agreement was not effective until Defendant Bommarito added the missing signature in December. Defendants have not identified any discretionary term at issue related to this argument such that the implied covenant of good faith and fair dealing is implicated.  To the extent Defendants challenge the alleged breach in this regard, the dispute is ultimately immaterial because Plaintiff had sufficient alternative bases for deeming Defendants in default and itself insecure under the Loan Agreements, as set forth above.

Because Defendants have not established any violation of the implied covenant of good faith and fair dealing, summary judgment will be granted in favor of Plaintiff.

### III.

Generally, at this time the Court would ask Plaintiff to submit a proposed judgment. However, Defendants claim that material factual disputes exist regarding Plaintiff's request for attorneys' fees, arguing that the request is premature and that no breakdown of fees and costs has been provided.  Plaintiff has not addressed the attorneys' fee issue in either its motion for summary judgment or reply.

In order to expedite the entry of judgment in this matter, the parties will be directed to confer in good faith on the issue of attorneys' fees.  The parties then will be directed to submit supplemental briefs addressing any unresolved issues.

### IV.

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment on Counts II, III, and IV, ECF No. 16, is **GRANTED.**

It is further **ORDERED** that Count I of Plaintiff's complaint is **DISMISSED as moot.**

It is further **ORDERED** that the parties are directed to **CONFER IN GOOD FAITH** regarding attorneys' fees.

It is further **ORDERED** that the parties are directed to **SUBMIT** supplemental briefs addressing any unresolved attorneys' fees issues, not to exceed 15 pages, on or before **November 29, 2016.** Each party will then have the opportunity to submit a response, not to exceed 7 pages, on or before **December 14, 2016.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 27, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 27, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

---